IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELBERT D. SMITH, II, | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:19-CV-2892-K-BK |
| | § | |
| CITY OF DALLAS, TEXAS, | § | |
|     DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the undersigned United States magistrate judge for pretrial management. Doc. 1. The Court now considers *Defendant City of Dallas's Motion for Summary Judgment*. Doc. 49. For the reasons that follow, Defendant's motion should be **GRANTED**.

**I.   BACKGROUND**

Plaintiff, an African American male, worked for Defendant for more than 20 years. Doc. 51-4 at 7 (Plaintiff's Deposition). He brings claims[1] against Defendant under Title VII for constructive discharge, discrimination, and retaliation—all based on race. Doc. 26 at 13. Most of the alleged discriminatory acts were perpetrated by Plaintiff's former direct supervisor, Lane Cheek ("Cheek"). Doc. 53 at 7. Eventually, and after Plaintiff filed numerous grievances, Defendant assigned Cheek to a different working division on the belief that Cheek and Plaintiff could not get along. Doc. 49 at 14; Doc. 51-8 at 16 (Terry Lowery's Deposition). On September

---

[1] The parties included in their briefings arguments related to Plaintiff's purported hostile work environment claim. *See* Doc. 50 at 20-21; Doc. 53 at 38-40. But the Court does not read Plaintiff's complaint so broadly as to include such a claim. *See* Doc. 26 at 13.

7, 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), in which he claimed he experienced both race discrimination and retaliation. Doc. 55-1 at 100-01 (Charge). The EEOC issued Plaintiff a right-to-sue notice on September 9, 2019, Doc. 51-4 at 217, and he submitted his letter of resignation to Defendant on January 6, 2020, Doc. 51-4 at 144.

## II. APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citation omitted).

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). Unsubstantiated beliefs are not competent summary judgment evidence—"the party opposing summary judgment is required to identify specific evidence in the record *and to articulate the precise manner in which that evidence supports his or her claim*." *Diaz v. Kaplan*

*Higher Educ., L.L.C.*, 820 F.3d 172, 176 (5th Cir. 2016) (quotation omitted) (emphasis in original). The court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment," but "[a] party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings." *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995).

**B. Title VII Framework**

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The *McDonnell Douglas* burden-shifting framework applies to Title VII in cases based on circumstantial evidence of discrimination. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). If a plaintiff establishes a *prima facie* case of discrimination under Title VII, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). If the defendant meets its burden, the case progresses to the pretext stage, where "the question for summary judgment is whether a rational fact finder could find that the employer discriminated against the plaintiffs on the basis of [their protected status]." *Pratt v. City of Hous., Tex.*, 247 F.3d 601, 606 (5th Cir. 2001).

### III.  ANALYSIS

**A. Plaintiff failed to exhaust his administrative remedies as to his constructive discharge claim and certain other actions occurring after March 23, 2019.**

Before filing suit in court, a Title VII plaintiff must exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC that identifies the employment practices he is challenging. 42 U.S.C. § 2000e-5(e)(1); *Davis v. Fort Bend Cty.*, 893 F.3d 300, 303 (5th Cir. 2018). Title VII suits are limited to the issues acknowledged in the EEOC charge

3

and the scope of the investigation that can be expected to grow out of that charge. *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

### 1. *Constructive Discharge Claim*

Defendant alleges "Plaintiff failed to exhaust his administrative remedies for his constructive discharge claim[]" as required by Title VII because the discharge occurred after he was issued his right-to-sue letter. Doc. 50 at 10-11. Plaintiff disagrees, arguing his charge "indicates that the discrimination and retaliation was a continuing action at the time his charge was filed," which thereby covers the January discharge.[2] Doc. 53 at 31.

Here, Plaintiff's alleged constructive discharge occurred on January 6, 2020, Doc. 51-4 at 144, but the EEOC completed its investigation at least four months prior when it issued his right-to-sue letter, Doc. 51-4 at 217. As such, the already-concluded EEOC investigation does not encompass the alleged constructive discharge. *Sapp*, 413 F. App'x at 752-53; *Foster v. Tex. Health Sys.*, No. 3:99-CV-1217-L, 2002 WL 1461737, at *6 (N.D. Tex. June 30, 2002) (Lindsay, J.) (finding plaintiff failed to exhaust administrative remedies for constructive discharge that occurred after filing of EEOC charge and EEOC's issuance of the right-to-sue letter). Indeed, constructive discharge is a discrete event for which a plaintiff must amend or supplement his EEOC charge. *Winn v. Cleburne Indep. Sch. Dist.*, No. 3:18-CV-2949-E, 2020 WL 5291941, at *4 (N.D. Tex. Sept. 3, 2020) (Brown, J.) (citing *Phillips v. Caris Life Scis., Inc.*, 715 F. App'x

---

[2] Plaintiff also argues the "*Gupta* exception" applies, allowing him to "pursue an unexhausted retaliation claim if the acts underlying the retaliation claim came after and in response to the filed EEOC charge." Doc. 53 at 33 (citing *Gupta v. E. Tex. State Univ.*, 654 F.2d 411 (5th Cir. 1981)). "The *Gupta* exception allows a plaintiff to proceed in district court on an unexhausted retaliation claim if that claim is alleging retaliation for properly bringing an exhausted claim before the district court. . . . Because the *Gupta* exception is premised on avoiding procedural technicalities, it has only been applied to retaliation claims alone . . . [and not] claims in which both retaliation and discrimination are alleged," as in the present case. *Sapp v. Potter*, 413 F. App'x 750, 752-53 (5th Cir. 2011) (citations omitted).

4

365, 369 (5th Cir. 2017)). Consequently, the constructive discharge claim is unexhausted and cannot proceed.

### 2. *Post-March 23, 2019 Acts*

Defendant alleges Plaintiff also failed to exhaust his administrative remedies as to actions occurring after March 23, 2019, the day Cheek was reassigned, because they "cannot have been reasonably expected to grow out of Plaintiff's EEOC charge." Doc. 50 at 19; Doc. 51-10 at 2 (Donovan Declaration). Plaintiff disagrees, claiming these acts are "like or related to the allegations made in the EEOC charge." Doc. 53 at 36.

As stated *supra*, a plaintiff's Title VII suit is only limited to the charge itself and the scope of the EEOC investigation which can reasonably be expected to grow out of the charge. *Pacheco*, 448 F.3d at 789. To determine whether a plaintiff's claims fall within the scope of his charge and the resulting investigation, the court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.* at 789. Courts are more stringent in this analysis when the claims "stemmed not from an incorrectly labeled legal conclusion" in the charge, "but from factual allegations omitted from the charge of discrimination." *Waters v. City of Dallas*, No. 3:11-CV-0540-K, 2012 WL 5363426, at *5 (N.D. Tex. Nov. 1, 2012) (Kinkeade, J.) (citing *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)).

In Plaintiff's EEOC charge, he checked the boxes for "race discrimination" and "retaliation," and specifically stated:

> a. Starting around January 31, 2018, I have been continuously subjected to harassment by my Supervisor, Lane Cheek. I have also been subjected to different terms and conditions in that as a Supervisor, I am not able to make decisions regarding my subordinates, and as the Hiring Manager, I am not able to make decisions or complete the hiring process unlike others not in my protected group.

5

> b. I filed a grievance with Human Resources on July 17, 2018 and subsequently received a letter of reprimand on August 17, 2018.

Doc. 55-1 at 100 (EEOC Charge). But the post-March 23 events at issue include Plaintiff's extra work assignments and August 2019 suspension. Doc. 50 at 19; Doc. 53 at 36-37. "A discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." *Turner v. St. Luke's Episcopal Health Sys.*, No. H-06-1668, 2008 WL 706709, at *8 (S.D. Tex. Mar. 14, 2008).

The discriminatory, extra work assignments are not mentioned in Plaintiff's EEOC charge. *See* Doc. 55-1 at 100 (Charge). As to his August 2019 suspension, it is not part of his exhausted claims. Plaintiff seems to suggest he exhausted his administrative remedies as to that event because the supervisor who issued the suspension "heard many of [Plaintiff's] grievances mentioned in [his] EEOC inquiry and charge." Doc. 53 at 37. However, that is not the relevant inquiry. Plaintiff's claims that his August 2019 suspension resulted from discrimination are premised on an event that had not yet occurred and involved an individual unnamed in his September 2018 EEOC charge. As such, the suspension could not have been reasonably expected to grow out of the discrimination charges he alleged to the EEOC. *Foster*, 2002 WL 1461737, at *6; *Waters*, 2012 WL 5363426, at *6 ("In *Fine*, the court held that it was not reasonable to expect events from a time period later than what the charging party described to grow out of the discrimination charge." (citing *Fine*, 995 F.2d at 578)). Allowing Plaintiff to litigate factual allegations in his complaint that have not been investigated circumvents the EEOC's role in employment discrimination cases. *Waters*, 2012 WL 5363426, at *3. Thus, to the extent set forth above, such allegations are not properly before the Court.

B. **Plaintiff cannot demonstrate he was subject to an ultimate or adverse employment decision.**

Defendant argues Plaintiff's exhausted claims—discrimination and retaliation—fail because he cannot show he suffered an adverse employment action. Doc. 50 at 26-28, 32. Specifically, Defendant avers "rejecting [Plaintiff's] requests for compensatory time, assigning him two extra work assignments, counseling/disciplining him, and suspending him" are not ultimate employment decisions as required for a discrimination claim, nor are they materially adverse actions as required for a retaliation claim. Doc. 50 at 26-28, 32-36. In response, Plaintiff cites his alleged constructive discharge as the adverse action consequent to his discrimination claim, Doc. 53 at 40-41, and his retaliation claim, Doc. 53 at 44-45.

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show, *inter alia*, that he was subject to an ultimate employment decision, such as "hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007). Similarly, showing a *prima facie* retaliation case requires, *inter alia*, "that an adverse employment action occurred." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).

1. *Constructive Discharge*

Plaintiff's alleged constructive discharge does not satisfy the adverse employment action requirement for either of his claims. As the Court established *supra*, Plaintiff's "discharge" occurred after the EEOC investigation of his charge was complete—he did not exhaust his administrative remedies as to his claim of constructive discharge. To permit his post-exhaustion, constructive discharge claim would effectively render the exhaustion requirement obsolete; numerous courts have held as much. *See, e.g.*, *Knight v. McCarthy*, 439 F. Supp. 3d 744, 754-55, 754 n.18 (E.D. Va. 2020) (finding plaintiff could not use constructive discharge for her Title

7

VII disability discrimination claim when she failed to exhaust administrative remedies for constructive discharge); *Voss v. Hous. Auth. of the City of Magnolia, Ark.*, 917 F.3d 618, 624 (declining to consider an unexhausted constructive discharge an adverse employment action for discrimination claim); *Terveer v. Billington*, 34 F. Supp. 3d 100, 112-13 (D.D.C. 2014) (granting a motion to dismiss discrimination claims to the extent they were based on plaintiff's unexhausted constructive discharge).  Finding the line of reasoning of these sister courts persuasive, this Court follows suit.

      At bottom, Plaintiff's constructive discharge claim is distinct from any exhausted claims. *See Terveer*, 34 F. Supp. 3d at 112.  "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice that must be individually addressed before the EEOC." *Sellers v. Deere & Co*, 791 F.3d 938, 944 (8th Cir. 2015) (quotation omitted).  Moreover, the United States Supreme Court has rejected "the so-called continuing violation doctrine," which would have allowed "plaintiffs to recover for *discrete acts* of discrimination or retaliation that had not been separately exhausted but were 'sufficiently related' to a properly exhausted claim." *Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 148 (D.D.C. 2005) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)).  Instead, to promote "strict adherence to the procedural requirements specified by the legislature," including the exhaustion requirement, as "the best guarantee of evenhanded administration of the law," discrete acts, such as constructive discharge, must be individually exhausted.  *See Morgan*, 536 U.S. at 108 (citing *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980)).  Under this precedent, Plaintiff's purported constructive discharge, which was not exhausted through his EEOC charge, cannot constitute an adverse employment action for purposes of the

retaliation and discrimination claims he alleges here, and Plaintiff fails to even suggest a different adverse employment action.

### 2. *Other Employment Acts*

The other acts Plaintiff complains of, which he contends sent him on the "path to constructive discharge," do not constitute adverse employment actions. First, Plaintiff complains of receiving "disciplinary action . . . including letters of counsel [and] a letter of reprimand." Doc. 53 at 41. But disciplinary warnings are not adverse employment actions because their effect, if any, on ultimate employment decisions is merely tangential. *Wesley*, 2008 WL 5220562, at *2 (cited case omitted). Plaintiff also claims Cheek "interfered with [his] management of his section and undermined his authority." Doc. 53 at 41. Undermining an employee by countermanding his orders in front of his subordinates is not an adverse employment action, however. *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 476 (5th Cir. 2004) (citing *Benningfield v. City of Hous.*, 157 F.3d 369, 377 (5th Cir. 1998)). Finally, Plaintiff claims Cheek mocked his "manner of speech in a derogatory way." Doc. 53 at 41. But "ordinary tribulations of the workplace, such as sporadic use of abusive language . . . and occasional teasing" do not constitute adverse employment actions. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). Further, "petty slights, minor annoyances, and simple lack of good manners," such as being chastised by superiors, do not rise to the level of material adversity. *Id.* (quotation omitted).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff fails to demonstrate that there is a genuine issue of material fact as to his failure to exhaust some claims and the non-existence of an adverse employment action as to the others. This is fatal to his discrimination and retaliation causes of

9

action. Thus, *Defendant City of Dallas's Motion for Summary Judgment*, Doc. 49, should be **GRANTED**, and all of Plaintiff's claims should be **DISMISSED WITH PREJUDICE** and this case **CLOSED**.

**SO RECOMMENDED** on July 20, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).